UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
In re:

TRONOX, *et al.*

    Debtors.

Chapter 11
Case No. 09-10156 (MEW)

-----------------------------------------------------------------x
STANLEY WALESKI, on his own behalf and on
behalf of others similarly situated,

                        Plaintiff,

    – v –

MONTGOMERY, MCCRACKEN, WALKER &
RHOADS, LLP; NATALIE D. RAMSEY; and
LEONARD A. BUSBY,

                        Defendants.

Adv. Pro. No. 19-1087 (MEW)

-----------------------------------------------------------------x

### MEMORANDUM DECISION DENYING
### PLAINTIFFS' MOTION FOR REMAND OR ABSTENTION

A P P E A R A N C E S :

OTTERBOURG, P.C.
New York, NY
*Attorneys for Plaintiff*
    By:  Richard C. Haddad, Esq.
         Melanie L. Cyganowski, Esq.
         Gabriela S. Leon, Esq.

THOMPSON HINE, LLP
New York, NY
*Attorneys for Defendants*
    By:  Barry M. Kazan, Esq.
         Robert P. Johnson, Esq.

**MICHAEL E. WILES**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court is the motion (the "**Remand Motion**") of the plaintiff Stanley Waleski

to remand this legal malpractice proceeding to the Court of Common Pleas in Luzerne County,

Pennsylvania, which is where the action originally was filed.  Waleski asks, in the alternative, that this Court abstain from hearing his claims.  The Remand Motion is opposed by defendants Montgomery, McCracken, Walker & Rhoades, LLP (the "**Montgomery Firm**"), Leonard A. Busby (a current partner of the Montgomery Firm), and Natalie D. Ramsey (a former partner of the Montgomery Firm).

Mr. Waleski alleges that during the bankruptcy cases of Tronox Incorporated and its affiliates the defendants committed legal malpractice in their representation of Mr. Waleski and a class of other persons who had been exposed to chemicals (primarily creosote) emitted from a plant located in Avoca, Pennsylvania (the "**Avoca Plaintiffs**").  Most of the claims are based on allegations that the defendants should have ensured that the Avoca Plaintiffs' recoveries in the bankruptcy case were not diluted by the allowance of claims filed on behalf of persons who alleged injuries based on creosote emissions from a different Tronox-related plant located in Mississippi.  Mr. Waleski also alleges that the defendants should have objected to the settlement of a fraudulent transfer claim, the proceeds of which were used to fund payments to tort victims.

The action filed by Mr. Waleski was removed to federal court and was later transferred to this Court.  Mr. Waleski now contends that this Court lacks subject matter jurisdiction over this proceeding.  I disagree.  The alleged wrongs committed by the defendants involved the performance of bankruptcy-specific tasks and the assertion of bankruptcy-specific objections and rights, and the dispute between the parties did not exist – and could not have existed – outside of the context of the Tronox bankruptcy cases.  The dispute also implicates the integrity of the bankruptcy process and in certain respects requires the interpretation of prior orders and rulings of this Court.  I therefore find that I have subject matter jurisdiction.  I also decline to abstain from hearing Mr. Waleski's claims.

**Background**

On April 11, 2018, Waleski filed his complaint in the Court of Common Pleas of Luzerne County, Pennsylvania.  The following facts are taken from the complaint and are assumed true only for purposes of the motion that is before the Court.

A.      **The Avoca Plaintiffs' Claims and the Montgomery Firm's Services**

The plaintiff, Stanley Waleski, is a resident of Pennsylvania who resides in Luzerne County.  He filed this action on behalf of himself and a class of Avoca Plaintiffs that is alleged to have approximately 4,300 members.  The Montgomery Firm is a Pennsylvania limited liability partnership, and the individual defendants are citizens of Pennsylvania.

In January 2005, the Avoca Plaintiffs began initiating lawsuits in the Court of Common Pleas in Luzerne County, through attorneys they hired for the state-court litigation.  In January 2009, however – before the claims in the Pennsylvania actions were adjudicated  – Tronox and various affiliated companies filed voluntary chapter 11 petitions.  The Pennsylvania cases were automatically stayed by the bankruptcy filings.

The Avoca Plaintiffs' state-court attorneys retained the Montgomery Firm in January 2009 to represent the interests of the Avoca Plaintiffs in the Tronox bankruptcy case.  The terms of the retention were memorialized in a contingent fee agreement.  The agreement provided that the Montgomery Firm would "represent the interests of the [Avoca Plaintiffs] in the bankruptcy proceedings of Tronox, Incorporated, and all related entities, now pending in the United States Bankruptcy Court for the Southern District of New York, Case No. 09-10156."  *See* Compl. ¶ 27. According to the plaintiff, one of the particular tasks entrusted to the Montgomery Firm was "to take steps to protect against any intrusion" from "potential claims from property owners in Mississippi who were represented by an aggressive lawyer from that state."  *See id.* ¶ 41.

Sometime later, the Montgomery Firm also undertook to represent Michael E. Carroll, one of the Avoca Plaintiffs who served as a member of the official creditors' committee. The complaint alleges that in the course of that representation, while "[a]cting in [their] official capacity as bankruptcy court-approved counsel for [ ] Carroll," the defendants "took responsibility for drafting trust documents." *See id.* ¶ 53. The purpose of the trust was to compensate victims of exposure to various contaminants and to satisfy various environmental liabilities. The trust documents established separate sub-funds for various types of claims and contemplated that the assets in each sub-fund would be distributed *pro rata* to the claimants who held the designated types of claims. More particularly:

- Fund A was established for the benefit of Allowed Asbestos Claims, Allowed Future Tort Claims, and Allowed Unaccounted-for Tort Claims;

- Fund B was established for the benefit of Allowed Indirect Environmental Claims;

- Fund C was established for the benefit of Allowed Property Damage Claims; and

- Fund D was established for the benefit of Allowed Non-Asbestos Toxic Exposure Claims.

The Avoca Plaintiffs, as victims of creosote exposure, held claims that fell into category D.

The trust documents also included Trust Distribution Procedures that outlined the process by which claims could be made against the trust and the ways in which allowed claim amounts would be calculated. *See generally* Ex. D, Form of the Tort Claims Trust Distribution Procedures, Plan Supplement [Dkt. 2343] at 63. The trust documents, including the Trust Distribution Procedures, were incorporated into the confirmed plan of reorganization (the "**Plan**") in the Tronox cases and were approved by Judge Gropper of this Court in November 2011. *See* Confirmation Order [Dkt. No. 2567] ¶ 85. Both the Plan and the Confirmation Order

provided that this Court retained jurisdiction over all matters arising out of the Tronox

bankruptcy case, including the jurisdiction to "hear and determine disputes arising in connection

with the interpretation, implementation or enforcement of the Plan or the Confirmation Order,

including disputes arising under agreements, documents or instruments executed in connection

with the Plan." Plan, Article XI; *see also* Confirmation Order ¶ 159.

The complaint alleges that the defendants sought to charge the Tronox estate for the

services they provided in connection with the drafting of the trust documents and the Trust

Distribution Procedures. *See* Compl. ¶ 54. The confirmed Plan explicitly acknowledged the role

of both Carroll and the Defendants in the case and approved an award of compensation in the

amount of $200,000. Subparagraph E of Article XII of the Plan noted the following:

> Tronox recognizes that Creditors' Committee member Michael E. Carroll
> contributed substantially to the formulation and development of the Plan and
> in connection with the support of Holders of Tort Claims for the Plan.
> Accordingly, Tronox agrees that, on the Effective Date, subject to supporting
> documentation being provided to counsel to each of Tronox, the Backstop
> Parties and the Creditors' Committee, Tronox shall pay all reasonable fees
> and expenses of Mr. Carroll's counsel, Montgomery, McCracken, Walker &
> Rhoads, LLP, for services rendered and to be rendered in connection
> therewith up to a maximum of $200,000.

Plan, Art. XII (E); *see also* Confirmation Order [Dkt. No. 2567] ¶ 145.

### B.    Subsequent Events

The defendants purported to end their representation of the Avoca Plaintiffs shortly after

the confirmation of the Plan, though the complaint alleges that the Avoca Plaintiffs and their

state-court attorneys did not consent to that termination. *See* Compl. ¶ 57. At that time, there

were strong doubts as to whether there would be significant distributions from the trust to tort

claimants. This is because the trust was to be funded mainly by a share of proceeds from a

pending fraudulent transfer litigation, and that litigation had not yet been resolved.

A few years later, the fate of the trust – and that of the tort claimants – significantly

brightened.  In November 2014, the District Court approved a settlement payment of $5.15

billion into the Tronox estate.  That settlement followed a lengthy trial of certain fraudulent

transfer claims in the Bankruptcy Court.  *See Tronox Inc. v. Kerr-McGee (In re Tronox Inc.)*, 503

B.R. 239, 248–49 (Bankr. S.D.N.Y. 2013).  The confirmed Plan provided that 12% of the

litigation proceeds would be allocated to the tort victim trust, and so the trust received

approximately $599 million of the settlement proceeds.  Most of the trust assets (84.53%)

ultimately were allocated to Fund D for the benefit of holders of Allowed Non-Asbestos Toxic

Exposure Claims.

One term of the settlement of the fraudulent transfer claims was a requirement that the

District Court issue a permanent injunction that would bar tort claimants from asserting claims

against Tronox-related entities (the "**Injunction**"), thereby effectively requiring them to look to

the trust for compensation.  *See Tronox Inc. v. Anadarko Petroleum Corp. (In re Tronox Inc.)*,

Case. No. 14-cv-5495 (KBF), 2014 WL 5825308, at *1 (S.D.N.Y. November 1, 2014).  The

District Court approved the settlement and issued the Injunction.  In doing so, the District Court

also overruled objections from certain of the Mississippi claimants that the $5.15 billion

fraudulent transfer settlement payment was too low and that the alleged poor quality of *their*

legal representation should defeat the settlement.  *Id*. at *6.

### C.    Other Proceedings

In April 2015, the trustee of the tort victim trust requested further instructions from this

Court concerning the handling of the Mississippi claims.  *See* Motion of Tort Claims Trustee,

Garretson Resolution Group, Inc. for Instructions [Dkt. No. 3030].  The Mississippi claims (like

the Avoca Plaintiffs' claims) were based on alleged exposures to creosote.  The Trustee's motion

was prompted by complaints by the Avoca Plaintiffs that the Mississippi claims had originally

been filed as "nuisance" claims and that they should be treated only as "Category C" property

damage claims for purposes of the trust, and not as "Category D" non-asbestos toxic exposure

claims.  They also complained that a large number of Mississippi claims had been filed as an

impermissible "group" proof of claim.

In June 2015, this Court granted the request for instructions.  The Court held that the

Mississippi Claimants were entitled to assert "Category "D" claims and that the Trustee had

properly allowed those claims.  The Court also held that the Avoca Plaintiffs lacked standing to

complain about the "group" proof of claim, and that in any event that the objection to the filing

of the "group" claim was without merit.  *See* Memorandum Opinion as to Tort Claims Trustee's

Motion for Instructions [Dkt. No. 3046] at 15–21.

In September 2015, the Avoca Plaintiffs moved to reinstate their pre-petition claims in

Pennsylvania state court (which were stayed when Tronox filed for bankruptcy) to the active

docket, seeking further recoveries from an entity that had formerly been the ultimate parent of

certain Tronox debtors.  In February 2016, the United States District Court for the Southern

District of New York held that the Avoca Plaintiffs' suit was in violation of the Injunction that

the District Court had issued.  *Tronox Inc. v. Anadarko Petroleum Corp. (In re Tronox Inc.)*, 549

B.R. 21, 50–51 (S.D.N.Y. 2016).  The District Court ordered the Avoca Plaintiffs to dismiss the

pending Pennsylvania actions with prejudice, and otherwise enjoined them from pursuing claims

that had been released as part of the settlement.  *Id.* at 56.

### D.    The Proceeding that is Now Before this Court

In April 2018, Mr. Waleski filed the instant suit against the Montgomery Firm and the

two individual defendants.  The complaint seeks approximately $620 million in damages plus

statutory interest and costs.  Mr. Waleski contends that the defendants fell short of their professional obligations to the Avoca Plaintiffs and that, as a result, the Avoca Plaintiffs received smaller recoveries on account of their tort claims than they otherwise would have received. More particularly, he has made the following criticisms of the actions (or inactions) of the defendants conduct during the course of the Tronox cases.

First, Mr. Waleski complains that after the Montgomery Firm agreed to represent the Avoca Plaintiffs in the Tronox bankruptcy, it also entered into the representation of Michael E. Carroll in his capacity as a member of the Unsecured Creditors' Committee, and thereafter served as "bankruptcy court-approved counsel" for Carroll.  *See* Compl.  ¶¶ 42–43, 53.  Mr. Waleski contends that this representation created a conflict of interest that required the defendants to act in the interests of all creditors and not just in the interest of the Avoca Plaintiffs.  There is no allegation that this representation was unknown to the Avoca Plaintiffs at the time, and at oral argument Mr. Waleski's counsel conceded that Mr. Carroll himself was a member of the Avoca Plaintiff class.  *See* May 17, 2019 Hr'g Tr. 18:2-7, 15-22.  However, Mr. Waleski's counsel asserted at oral argument that the Montgomery Firm had not provided a sufficient explanation, to the Avoca Plaintiffs, of the potential consequences of the firm's representation of Mr. Carroll.  *Id.*

Second, Mr. Waleski contends that the Montgomery Firm, in its capacity as counsel to Mr. Carroll, assisted with the drafting of the Trust Distribution Procedures.  *See* Compl. ¶ 58. He asserts that the Montgomery Firm should have drafted procedures that would have separately classified the Avoca Plaintiffs' claims and that would have provided better treatment of the Avoca Plaintiffs' claims in comparison to other claims.

Third, Mr. Waleski asserts that the defendants should have objected to the "omnibus" proof of claim filed on behalf of the Mississippi claimants, and contends that if they had done so on a timely basis the claim would have been disallowed. *See* Compl. ¶¶ 62, 73. The complaint argues that this Court's 2015 decision regarding the group proof of claim should be interpreted as merely holding that the Avoca Plaintiffs no longer had standing to raise the issue in 2015, and not as a ruling on the merits of the objection. *Id.* ¶ 71.

Finally, Mr. Waleski contends that the defendants should have objected to the $5.15 billion settlement of the fraudulent transfer litigation on the ground that it was not sufficient to ensure full payment of all of the Avoca Plaintiffs' claims, and that if such an objection had been filed then such full payment could and would have been obtained. *Id.* ¶¶ 67, 74.

Mr. Waleski's suit was removed by the defendants to the United States District Court for the Middle District of Pennsylvania. Mr. Waleski sought to remand the case back to state court, and the defendants filed a motion to transfer the case to the Southern District of New York. The District Court for Middle District of Pennsylvania granted the transfer motion and declined to decide the Remand Motion so that it could instead be resolved by this Court. *See* Order, *Waleski v. Montgomery, McCracken, Walker & Rhoads, LLP*, 18-cv-01144 (RDM), [Dkt. No. 37].

## Discussion

As the removing parties, the defendants bear the burden to show that federal jurisdiction exists. *Pullman Co. v. Jenkins,* 305 U.S. 534, 540 (1939); *Vasura v. Acands,* 84 F. Supp. 2d 531, 533 (S.D.N.Y. 2000). Courts construe the removal statute strictly, resolving all doubts in favor of remand. *Purdue Pharma L.P. v. Kentucky,* 704 F.3d 208, 220 (2d Cir. 2013); *In re Village of Kiryas Joel,* 2012 WL 1059395 at *2 (S.D.N.Y. Mar. 29, 2012).

Section 1334(c) of title 28 of the U.S. Code provides that federal district courts – of which bankruptcy courts are a unit – have jurisdiction over "civil proceedings arising under title

11 or arising in or related to a case under title 11." 28 U.S.C. §§ 157(a), 1334(b).  The parties

agree that the outcome of the Remand Motion depends on whether the asserted claims are claims

that arose "in" the Tronox bankruptcy cases.[1]

Courts that have grappled with the scope of "arising in" jurisdiction have observed that

the term "is not entirely clear."  *Baker v. Simpson*, 613 F.3d 346, 351 (2d Cir. 2010).  As a

general matter it covers claims that "are not based on any right expressly created by [T]itle 11,

but nevertheless, would have no existence outside of the bankruptcy."  *Id.* (relying on *Wood v.

Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir. 1987)).  It plainly covers matters that require the

interpretation or enforcement of orders issued during a bankruptcy case.  *See KeyBank Nat'l

Ass'n v. Franklin Advisors, Inc.*, 600 B.R. 214, 230 n. 14 (S.D.N.Y. 2019); *Giese v. Community

Tr. Bank (In re HRNC Dissolution Co.)*, 2015 WL 5299468, at*6 (Bankr. E.D. Ky. Sept. 9,

2015); *Lothian Cassidy LLC v. Ransom*, 428 B.R. 555, 560 (E.D.N.Y. 2010).  It also generally

covers matters over which a bankruptcy court has "core" jurisdiction, *see Mt. McKinley

Insurance Co. v. Corning Inc.*, 399 F.3d 436, 447–48 (2d Cir.2005) – though the concept of

"core" jurisdiction is itself not always easy to define.

While the full scope of "arising in" jurisdiction may be difficult to describe, a number of

prior decisions provide guidance as to whether this court has "arising in" jurisdiction over the

professional malpractice claims that Mr. Waleski has asserted.

One such decision is the decision by the Second Circuit Court of Appeals in *Baker v.

Simpson*, 613 F.3d 346 (2d Cir. 2010).  In *Baker*, the chapter 11 debtor brought state law claims

---

[1]   Defendants at one point argued that Waleski's claims are "related to" the prior bankruptcy cases
but their counsel withdrew that contention at oral argument and acknowledged that the
defendants' sole jurisdictional argument is that the underlying claims "arose in" the Tronox
bankruptcy cases.  May 17, 2019 Hr'g Tr. 4:15-5:13.

in state court against various of his professionals, alleging that they had been guilty of legal malpractice, negligence, and fraud during the bankruptcy case. *Id.* at 348. After the defendants removed the case to federal court, the debtor sought to remand the case. *Id.* at 349. The Second Circuit affirmed the lower court's denial of the remand request and affirmed the finding that "arising in" jurisdiction existed over the claims. *Id.*

In *Baker*, the Court rejected the debtor's contention that the lower court lacked jurisdiction because the claims were made pursuant to state law. *Id.* at 351. The Court held that "the determinative issue" is not whether the "'origin' of the claims [is] found in state law" but instead "whether claims that appear to be based in state law are really an extension of the proceedings already before the bankruptcy court." *Id.* (citing *Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.)*, 163 F.3d 925, 931–32 (5th Cir. 1999). The Court agreed that the professional malpractice claims in *Baker* were "inseparable from the bankruptcy context" and that resolving the claims was an "essential part of administering the estate." *Id.* at 350–51. The Court noted that "it is clear to us" that a bankruptcy court has the ability to review the conduct of attorneys whose appointment is approved by the court. *Id.* at 351. The Court also noted that the relevant services had been provided during the chapter 11 case, and that Baker's criticism of the attorneys' work (and of the outcomes of his case as reflected in the orders and judgments entered by the court) implicated the integrity of the bankruptcy process. *Id.*

Based on these factors, the Court concluded that the malpractice claims "would have had no practical existence but for the bankruptcy and that they had arisen in Baker's chapter 11 case." *Id.* (citation omitted). The Court also observed that its holding was consistent with decisions in other Circuits. *Id.* (citing *Grausz v. Englander*, 321 F.3d 467, 469, 471–72 (4th Cir. 2003) (debtor's malpractice claim against his attorneys arose "in" the bankruptcy case);

*Geruschat v. Ernst Young LLP (In re Seven Fields Dev. Corp.)*, 505 F.3d 237, 260 (3d Cir.

2007); *In re Southmark Corp.*, 163 F.3d at 32; *Walsh v. Northwestern Nat'l Ins. Co. (In re

Ferrante)*, 51 F.3d 1473, 1476 (9th Cir. 1995)).

Lower courts in this Circuit that have interpreted the scope of "arising in" jurisdiction

over malpractice claims have similarly emphasized that the touchstone of the inquiry is whether

the dispute is "intimately related to the administration of the bankruptcy." *See Winstar Holdings,

LLC v. Blackstone Grp.* L.P., No. 07 CIV. 4634 (GEL), 2007 WL 4323003, at *5 (S.D.N.Y. Dec.

10, 2007). In *Winstar*, a plaintiff acquired a debtor and then sued the professional advisors who

provided the analyses that helped guide the reorganization process. *Id.* at *2. Neither the

plaintiff nor the defendant was the debtor itself, and the "claim [was] not brought by the

bankruptcy estate itself." *Id.* at *5. Nonetheless, the Court found that "the claims at issue,"

which were misrepresentation claims "sound[ing] *solely* in New York New York common law,"

were "more closely connected to the administration of the bankruptcy than most garden-variety

common-law claims." *Id.* at *4 (emphasis added). Because "the matter is still intimately related

to the administration of bankruptcy" and because the Court "has a vital interest in policing the

integrity of the bankruptcy process in general," the Court found that it had "arising in"

jurisdiction. *Id.* at *5.

*Lothian Cassidy LLC v. Ransom*, 428 B.R. 555 (E.D.N.Y. 2010), is also illustrative.

*Lothian* concerned state-law claims by investors against the debtor's directors, officers and

attorneys who initiated and participated in the debtor's reorganization process. *See* Compl.,

*Lothian Cassidy LLC v. Ransom*, No. 10-cv-00420 (ENV) (SMG) [Dkt. No. 1-4] ¶¶ 26, 34, 113,

119–123. The *Lothian* court found that "tort claims concerning alleged professional malpractice

*in the actual administration* in the bankruptcy court *of [the debtor's] bankruptcy estate* creates

federal "arising in" jurisdiction, particularly where the claims are "intimately related to the administration of the bankruptcy," "involve[e] the enforcement or construction of a bankruptcy court order," and "require gateway interpretation of the bankruptcy court's prior orders." *Lothian*, 428 B.R. at 560 (emphasis added).

The bankruptcy court for the District of Columbia similarly found that it had "arising in" jurisdiction over malpractice claims in *In re Kaiser Group International, Inc.*, 421 B.R. 1 (Bankr. D.D.C. 2009). In *Kaiser*, the Court found that the integrity of the bankruptcy process – and therefore "arising in" jurisdiction – was implicated where a malpractice claim second-guessed the Court's determinations concerning a class claim that "significantly affected the plan's distribution of shares." *Id.* at 12 & n. 9. Because the plaintiff's theory was that the alleged negligence resulted in "erroneous" rulings by the Court, the claims were found to be "mired in bankruptcy law, [the] interpretation of the reorganization plan, and the bankruptcy court's determinations in the bankruptcy proceeding." *Id.*

Most of the malpractice cases that have raised issues as to the scope of a bankruptcy court's "arising in" jurisdiction have involved claims against a debtor's own professionals. However, decisions in other contexts have made clear that "arising in" jurisdiction exists so long as a matter is intricately related to the bankruptcy process, even if it does not involve a debtor or a court-approved professional.

In *KeyBank National Association v. Franklin Advisors, Inc.*, 600 B.R. 214 (S.D.N.Y. 2019), for example, the Court held that state-law breach of contract claims bore a sufficiently close relationship to the reorganization process that the court could properly exercise "arising in" jurisdiction over them, even though the debtor was not party to the action, the issues did not relate to services performed for the debtor, and the underlying bankruptcy case was in a different

district.  The dispute in *KeyBank* involved two creditors who had agreed to provide debtor-in-possession financing in a chapter 11 case in Delaware.  *Id.* at 220–21.  The plaintiffs in *KeyBank* contended that that the defendants had entered into a subsequent financing agreement that violated certain agreements that governed the initial debtor-in-possession financing.  *Id.* at 219.  The *KeyBank* court found that it had "arising in" jurisdiction in part because resolving the dispute "was born out of bankruptcy law and bankruptcy proceedings" and because, absent the bankruptcy, there would have been no debtor-in-possession financing agreement.  *Id.* at 230.  In reaching that conclusion the court cited *Delaware Trust Co. v. Wilmington Trust, N.A.*, 534 B.R. 500, 514 (S.D.N.Y. 2015), in which case the Court had held that a dispute over the calculation of adequate protection payments could only have arisen in a bankruptcy proceeding.

Bankruptcy courts in other districts have also determined that claims that functionally challenge the outcomes of bankruptcy cases, and that question whether orders entered in bankruptcy cases were proper or were instead the result of misconduct, are textbook examples of disputes that implicate the integrity of the bankruptcy process.  In *In re HRNC Dissolution Co.*, No. 02-14261, 2015 WL 5299468, at *6 (Bankr. E.D. Ky. Sept. 9, 2015), *aff'd sub nom. In re HNRC Dissolution Co.*, 585 B.R. 837 (B.A.P. 6th Cir. 2018), *aff'd*, 761 F. App'x 553 (6th Cir. 2019), the Court dealt with a declaratory judgment action initiated by a plaintiff who claimed an ownership interest in certain assets sold at a bankruptcy auction.  The claim was made several years after the auction took place, and the aim of the action was to recover the assets from the winning bidders.  *Id.* at *1-3.  The court held that "arising in" jurisdiction existed because "[t]he bulk of [p]laintiff's claims . . . complain of bad acts taken *in* a bankruptcy proceeding."  *Id.* at *6 (emphasis altered).  The "very injury" plaintiff complained of was "the judgment concluding [the adversary] proceeding," and all of the plaintiff's state-law theories "fault [d]efendants for bad

acts in the [proceeding]." *Id.*; *see also D.A. Elia Const. Corp. v. Damon Morey LLP*, No. 11-CV-637-A, 2013 WL 1337194, at *8 (W.D.N.Y. Mar. 29, 2013) ("arising in" jurisdiction exists over dispute between debtor and former counsel because the action against the defendants effectively challenged the fairness and propriety of the orders that had been issued by the court).

Based on these decisions, and applying the factors set forth in them, the Court concludes that the claims in this malpractice case arose "in" the Tronox bankruptcy cases and that this Court has jurisdiction over them.

First, it is quite clear that the alleged acts of malpractice occurred entirely during the bankruptcy case and in the context of the bankruptcy proceedings. The defendants were engaged to provide services *after* the petition date, and there is no allegation that they provided services outside of the bankruptcy case. All of the allegations regarding the defendants' alleged malpractice are limited to things the defendants did (or did not do) during the course of the bankruptcy cases themselves.

Second, the alleged misdeeds relate to bankruptcy-specific rights and tasks and could only have arisen in a bankruptcy context. More particularly:

- Waleski claims that the defendants should have objected to the omnibus claims filed on behalf of the Mississippi claimants. A creditor has the right to object to another creditor's claim during the bankruptcy process, but Mr. Waleski's counsel acknowledged during oral argument that there is no other context in which one class of tort creditors could object to claims made by another group. *See* May 17, 2019 Hr'g Tr. 11:18-12:13. Counsel further admitted that the Avoca Plaintiffs would not have been able to intervene in the Mississippi claimants' action against

Tronox in the Mississippi state court.  *Id.*  It was only in bankruptcy process that the Avoca Plaintiffs could have objected to other creditors' claims.

- Waleski also claims that the Montgomery Firm should have achieved a better outcome for the Avoca Plaintiffs during the drafting of the trust procedures that were an integral part of the Plan.  The drafting of the trust procedures, which addressed the respective rights of entire classes of tort and environmental creditors, was an integral part of a bankruptcy plan, and was born out of bankruptcy law and bankruptcy proceedings and the need (in the context of those proceedings) to classify claims and to provide mechanisms for their resolution. Absent the Bankruptcy Code and the bankruptcy cases, there would have been no Plan and no decisions to make as to how to classify the various tort claims.  *Id.*

- Waleski contends that the defendants should have objected to the settlement of the fraudulent transfer claims that the estate had asserted.  The estate's right to pursue those claims derived from powers granted by the Bankruptcy Code, *see* 11 U.S.C. §§ 544, 548, 550, and the rights of creditors to object to such a proposed settlement also is a product of the unique standing rules that apply in bankruptcy.

- Most importantly, the primary claim that Mr. Waleski has made is that the Avoca Plaintiffs should not have had to "share" so much of the available assets with the Mississippi Claimants and should somehow have gotten better outcomes than those other creditors received.  Whether the defendants could have reasonably pushed for such different outcomes, and whether differential treatment of the claims was even possible, is entirely a function of bankruptcy law.

Third, Mr. Waleski's complaint expressly alleges that some of the defendants' alleged wrongs were committed in an "official," court-approved capacity – namely, as counsel to Mr. Carroll as a member of the official committee of unsecured creditors.  *See* Compl. ¶ 53 (noting that the Montgomery Firm was "court appointed" and challenging acts that the defendants took in a court-appointed capacity).  Waleski's counsel attempted to backtrack from these allegations during oral argument, *see* May 17, 2019 Hr'g Tr. 15:8-16:15, but the terms of the complaint are clear and they are controlling in measuring this Court's jurisdiction.  *See S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 132 (2d Cir. 2010) (noting that "the jurisdictional inquiry 'depends entirely upon the allegations in the complaint'" rather than a court's assessment of the merits of the allegations (internal citations omitted)).

Fourth, the claims require consideration and interpretation of this Court's prior orders and rulings.  For example, the complaint alleges that a different outcome would have been possible if the defendants had objected to the Mississippi "omnibus" claim, and it further alleges that this Court's prior ruling on this issue was merely a holding that the Avoca Plaintiffs lost standing to object to the claims once the Plan was confirmed.  This Court (not a jury in Pennsylvania) is in the best position to interpret this Court's own prior order.

Fifth, and perhaps most importantly, the asserted claims directly implicate the integrity of the bankruptcy process.  The theory of the malpractice claims is that different Court orders would have been issued during the Tronox bankruptcy cases, different plan terms would have been approved and that a different settlement of fraudulent transfer claims would have occurred if only the defendants had acted differently.  The Magistrate who recommend that this action be transferred to this Court correctly recognized that in these respects the underlying claims will "involve analyzing and potentially questioning the bankruptcy court's own resolution of the

Avoca Plaintiffs' objections, and the distribution that the Avoca Plaintiffs eventually received."
*See* Report and Recommendation, *Waleski v. Montgomery, McCracken, Walker & Rhoades, LLP*, 18-CV-1144 (RDM) [Dkt. No. 36] at 12.

Mr. Waleski's primary contention, for example, is that the Avoca Plaintiffs who asserted claims based on creosote exposure were effectively in competition with the similarly situated Mississippi victims of creosote exposure, and that the defendants had a duty to ensure that the Avoca Plaintiffs fared better than the Mississippi claimants. However, it is fundamental to the bankruptcy process that similarly situated creditors are treated similarly. *See* 11 U.S.C. ¶ 1122(a) (providing that, subject to subsection (b), "a plan may place a claim or interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class"); *In re Ames Dep't Stores, Inc.*, 306 B.R. 43, 54 (Bankr. S.D.N.Y. 2004) (noting that the "general goal in bankruptcy law [is] to distribute limited debtor assets equally among similarly situated creditors"); *In re Balport Const. Co., Inc.*, 123 B.R. 174, 181 (Bankr. S.D.N.Y. 1991) (refusing a movant's request to treat a claim in a manner that "would violate the principle that all similarly situated creditors should share equally"). The gist of Mr. Waleski's claims is that the equal treatment of the Mississippi claims under the confirmed plan and under the approved trust procedures – and also under this Court's 2015 order – were not the products of fundamental justice, or of the requirements of the Bankruptcy Code, but instead were only the results of bad lawyering. Just as a bankruptcy court has "arising in" jurisdiction where claims implicate the integrity of sales processes, *see In re HRNC Dissolution Co.*, 2015 WL 5299468, at *6, so too does it have "arising in" jurisdiction where claims implicate the integrity of the confirmation process and of the fairness and propriety of the allocations of available assets among similarly situated creditors.

These points, taken together, make clear that "[i]t is somewhat disingenuous for [the Avoca Plaintiffs] to attempt to pry these claims out of their bankruptcy setting." *See In re Southmark Corp.*, 163 F.3d at 931.

Waleski's counsel urges the Court to limit *Baker* and its progeny to cases in which claims are made against estate fiduciaries. This would be unavailing, as noted above, because the complaint itself alleges that the defendants drafted trust procedures on behalf of the estate as court-approved counsel. In any event, I do not find that factor to be controlling. I find for the reasons stated above that the Court's "arising in" jurisdiction over a malpractice claim should be based on the circumstances giving rise to the claim and the extent to which the claim is integrally related to the bankruptcy process, and should not be based solely on who the defendant is and who the defendant primarily represented.

Waleski similarly argues that there is no "arising in" jurisdiction because an attorney's duties to a client are based on state law and because the malpractice claim is asserted under state law. A similar contention was rejected by the Second Circuit Court of Appeals in *Baker*. *See* 613 F.3d at 351 (holding that "the determinative issue" is not whether the professional's duty to a client had its origin in state law, but instead "whether claims that appear to be based in state law are really an extension of the proceedings already before the bankruptcy court"). The determination of whether "arising in" jurisdiction exists should be based on the facts that allegedly gave rise to the claim. As noted above, the alleged errors and misdeeds in this case all involved bankruptcy-specific matters and could only have arisen "in" the bankruptcy context. The claims also implicate the integrity of the orders and creditor treatments approved by this Court in the Tronox bankruptcy cases.

It is true that the mere fact that conduct took place during a bankruptcy case is not enough to provide "arising in" jurisdiction. Waleski has cited, for example, to a number of decisions that involved conduct that occurred during a bankruptcy case but did not involve the performance of bankruptcy-specific tasks and/or that did not challenge the outcomes of a bankruptcy case in ways that implicated the integrity of the bankruptcy process. *See Brown Media Corp. v. K&L Gates, LLP*, 854 F.3d 150, 160 (2d Cir. 2017) (rejecting an argument that a debtor's failure to raise an issue in bankruptcy court meant that a third party was barred by *res judicata* from bringing a later suit); *Gupta v. Quincy Med. Ctr. (In re Gupta)*, 858 F.3d 657, 660 (1st Cir. 2017) (involving narrow provision concerning severance pay in a pre-petition asset purchase agreement that was later summarily approved by the bankruptcy court); *Binder v. Price Waterhouse & Co. (In re Resorts Int'l, Inc.)*, 372 F.3d 154 (3d Cir. 2004) (involving the question of whether a litigation trust's accountants committed errors in rendering auditing and tax advice that did not involve bankruptcy-related processes or issues); *Torkelson v. Maggio (In re Guild)*, 72 F.3d 1171, 1179 (1st Cir. 1996) (action against a bankruptcy trustee in his *personal* capacity and not his trustee capacity); *Nat'l City Bank v. Coopers & Lybrand*, 802 F.2d 990 (8th Cir. 1986) (malpractice action regarding perfection of a security interest, where the only connection to the bankruptcy case was an allegation that the problem would not have been discovered but for the filing of the bankruptcy case); *Morshet Israel, Inc. v. Audrey & Sydney Irmus Charitable Found. (In re Morshet Israel, Inc.)*, No. 95 B 45155 (CB), 1999 WL 165699, at *2 (S.D.N.Y. Mar. 24, 1999) (malpractice action by secured DIP lender against its own counsel where counsel failed to perfect the liens collateralizing the DIP); *ICICI Bank Ltd. V. Essar Global Fund Ltd.*, 565 B.R. 241, 245 (S.D.N.Y. 2017) (action by creditor to enforce pre-bankruptcy obligations owed by debtor's guarantors). Here, however, the claims "are more closely connected to the

administration of the bankruptcy than most garden-variety common-law claims" and should be treated as matters that arise "in" the Tronox bankruptcy cases. *Winstar Holdings, LLC v. Blackstone Grp. L.P.*, No. 07 CIV. 4634 (GEL), 2007 WL 4323003, at *4 (S.D.N.Y. Dec. 10, 2007).

Waleski also contends that this action should be remanded because it has no effect on the Tronox estate and because the Tronox case is closed. That might be a powerful factor if the contention were that this Court has jurisdiction only because the matter allegedly is "related to" the Tronox cases. Here, however, the contention is that the claims arose "in" the Tronox case. "A court's jurisdiction 'does not evaporate with the closing of a bankruptcy case.'" *Sterling Vision, Inc. v. Sterling Optical Corp. (In re Sterling Optical Corp.),* 302 B.R. 792, 808 (Bankr. S.D.N.Y. 2003) (quoting *Speleos v. McCarthy*, 201 B.R. 325, 329 (D.D.C. 1996)). It is the subject matter of the claims, and not the timing of the lawsuit, that determines whether "arising in" jurisdiction exists.

Finally, Waleski argues that malpractice cases frequently are decided by a different court than the one in which the malpractice allegedly occurred. That may be true, but the issue presently before me is whether this Court has jurisdiction, and not whether another court would be precluded from hearing the claims.

For the foregoing reasons, I conclude that the Defendants have met their burden to show that federal subject matter jurisdiction exists over Waleski's claims. *See Pullman Co. v. Jenkins,* 305 U.S. 534, 540 (1939); *Purdue Pharma L.P. v. Kentucky,* 704 F.3d 208, 220 (2d Cir. 2013); *Vasura v. Acands,* 84 F. Supp. 2d 531, 533 (S.D.N.Y. 2000). To be sure, this conclusion does not mean that every malpractice claim made by a creditor against a professional in connection with a bankruptcy case automatically falls within the ambit of a bankruptcy court's jurisdiction.

It is the nature of the claims asserted here, and the actions and orders on which they are based, that give rise to this Court's jurisdiction.

Waleski has also argued that this Court should abstain from hearing his claims and should allow them to move forward in the Pennsylvania state court. I disagree.

So-called "mandatory abstention" rules plainly do not apply. Section 1334(c)(2) of title 28 provides, in applicable part, that the court "shall abstain" from hearing a claim "related to a case under title 11 but not arising under title 11 or arising in a case under title 11" if the claim could not otherwise have been heard in federal court. *See* 28 U.S.C. § 1334(c)(2). Because "arising in" jurisdiction exists over the plaintiff's claims, mandatory abstention is inapplicable.

Under section 1334(c)(1), this Court has the authority and the discretion to decline to exercise jurisdiction over a proceeding "in the interest of justice or in the interest of comity with State courts or respect for State law[.]" 28 U.S.C. § 1334(c)(1). Waleski bears the burden of persuasion to demonstrate that such "permissive" abstention is appropriate. *Hough v. Margulies (In re Margulies)*, 476 B.R. 393, 402 (Bankr. S.D.N.Y. 2012) (citing *Bickerton v. Bozel S.A. (In re Bozel, S.A.)*, 434 B.R. 86, 102 (Bankr. S.D.N.Y.2010)).

Courts in this district typically rely on a twelve-factor test to determine if permissive abstention is appropriate. Those factors include: (1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable state law, (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted 'core' proceeding, (8) the feasibility of severing state law claims

from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of the court's docket, (10) the likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of non-debtor parties. *See Allstate Ins. Co. v. CitiMortgage, Inc.,* 2012 WL 967582, at *6 (S.D.N.Y. Mar. 13, 2012); *Langston Law Firm v. Mississippi,* 410 B.R. 150, 156 (S.D.N.Y. 2008); *NYC Employees Retirement Sys. v. Ebbers (In re WorldCom, Inc. Sec. Litig.),* 293 B.R. 308, 332 (S.D.N.Y.2003); *In re Gordon,* 2011 WL 3878356 (Bankr. S.D.N.Y. Aug. 30, 2011).

However, "[i]n determining whether to exercise permissive abstention under § 1334(c) courts have considered *one or more* (not necessarily all) of twelve factors." *In re Cody, Inc.,* 281 B.R. 182, 190 (S.D.N.Y. 2002) (emphasis in original). The factors largely ask the Court to balance the federal interest in efficient bankruptcy administration against the interest of comity between the state and federal courts. *Fried v. Lehman Bros. Real Estate Assocs. III, L.P.*, 496 B.R. 706, 712–13 (S.D.N.Y. 2013). The analysis "is not a mechanical or mathematical exercise" and the court "need not plod through a discussion of each factor in the laundry lists developed in prior decisions." *In re Janssen*, 396 B.R. 624, 636 (Bankr. E.D. Pa. 2008). "'Ultimately, the pursuit of "equity," "justice" and "comity" involves a thoughtful, complex assessment of what makes good sense in the totality of the circumstances.'" *Id.* (quoting *Kerusa Co LLC v. W10Z/515 Real Estate Ltd. P'ship*, No. 04 Civ. 708(GEL), 04 Civ. 709(GEL), 04 Civ. 710(GEL), 2004 WL 1048239, at *3 (S.D.N.Y. May 7, 2004)); *see also Winstar*, 2007 WL 4323003 at *16 ("Under all these circumstances, common sense dictates the conclusion that the Bankruptcy Court is the proper forum for resolving these disputes.").

23

Here, this Court has a strong and overwhelming interest in adjudicating the claims. That resolution of the claims necessarily depends not only on an interpretation of this Court's prior orders and rulings in a complicated and protracted bankruptcy process, but also a determination of what would and would not have been permissible (from a bankruptcy perspective) in the treatment of competing creditors' claims in the Tronox cases. It is important to the integrity of the bankruptcy process, and of the orders that this Court issued, that Mr. Waleski's challenges to these outcomes be resolved in this Court.

Bankruptcy-law issues also predominate over the state-law issues, despite Mr. Waleski's conclusory contention to the contrary. An attorney's duty to a client may be a function of state law, but the questions of whether the attorneys violated their duties in this case, and whether the different outcomes posited by plaintiff were in fact possible outcomes, are questions of bankruptcy law. *See McClelland v. Grubb & Ellis Consulting Servs. Co. (In re McClelland)*, 377 B.R. 446, 458 (Bankr. S.D.N.Y. 2007), aff'd, 460 B.R. 397 (Bankr. S.D.N.Y. 2011) (finding permissive abstention inapplicable to malpractice claims concerning professionals who negotiated settlement approved by the court); *see also Norkin v. DLA Piper Rudnick Gray Cary, LLP*, 2006 WL 839079, at *5 (S.D.N.Y. March 31, 2006) ("Although plaintiff's causes of action are styled as [ ] [s]tate law claims, they turn largely on issues that are intertwined with the bankruptcies . . . including the propriety of [defendant's] advice related to . . . those proceedings").

While Pennsylvania law might provide Waleski with a cause of action, he points to no complex or unsettled area of Pennsylvania law that would counsel in favor of remand, nor does he imply that this Court is somehow hamstrung from applying whatever points of Pennsylvania law might be relevant. *See Winstar*, 2007 WL 4323003, at *5 (no abstention because "[a]lthough

plaintiffs' claims are based on state law, the state law claims are straightforward common-law claims that do not involve arcane or idiosyncratic provisions of [state] law.").

Finally, Mr. Waleski contends that should this Court choose not to abstain, he would lose his right to a jury trial.  I will presume, for this purpose, that Mr. Waleski has the right to present these claims to a jury, though I will note that this particular issue has not been briefed and so my comments are not meant to be binding to the extent that any dispute exists over this point.  I simply note that if there is a right to a jury trial then such a jury trial could be held before this Court if the parties were to consent to it.  *See* 28 U.S.C. § 157(e).  Alternatively, the reference could be withdrawn and the District Court could conduct the jury trial if that were necessary.

For the foregoing reasons, an order will be issued denying the Remand Motion and denying the request for abstention.  The parties are directed to negotiate a scheduling order that will govern how this action will proceed.

Dated: New York, New York
        July 18, 2019

                                        /s/ Michael E. Wiles
                                        Honorable Michael E. Wiles
                                        United States Bankruptcy Judge