**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____

|                                                                              |     |                             |
|------------------------------------------------------------------------------|-----|-----------------------------|
| In re                                                                        | :   | Chapter 11                  |
|                                                                              | :   |                             |
| **TRONOX INCORPORATED,** *et al.*,                                           | :   | Case No. 09-10156 (MEW)     |
|                                                                              | :   |                             |
| Debtor.                                                                      | :   |                             |
|                                                                              | :   |                             |
| **STANLEY WALESKI,** on his own behalf and on behalf of all others similarly situated, | :   |                             |
|                                                                              | :   |                             |
| Plaintiff,                                                                   | :   |                             |
| v.                                                                           | :   | Adv. Pro. No. 19-01087 (MEW)|
|                                                                              | :   |                             |
| **MONTGOMERY, McCRACKEN, WALKER & RHOADS, LLP,** *et al.*,                    | :   |                             |
|                                                                              | :   |                             |
| Defendants.                                                                  | :   |                             |

---

### MEMORANDUM DECISION DISMISSING AMENDED COMPLAINT AS BARRED BY THE STATUTE OF LIMITATIONS

A P P E A R A N C E S :

OTTERBOURG, P.C.
New York, NY
*Co-Counsel for Plaintiff*
    By:  Richard C. Haddad, Esq.
          Gabriela S. Leon, Esq.

WHITEFORD, TAYLOR & PRESTON LLP
Pittsburgh, PA
*Co-Counsel for Plaintiff*
    By:  Scott M. Hare, Esq.

KELLER LENKNER LLC
*Co-Counsel for Plaintiff*
    By:  Ashley Keller, Esq.
          Travis Lenkner, Esq.
          Seth A. Meyer, Esq.

THOMPSON HINE, LLP
New York, NY and Cincinnati, OH
*Counsel for Defendants*
    By:   Barry M. Kazan, Esq.
           Robert P. Johnson, Esq.
           Emily G. Montion, Esq.

**MICHAEL E. WILES**
**UNITED STATES BANKRUPTCY JUDGE**

       Plaintiff Stanley Waleski,(the ("Plaintiff") has filed suit on his own behalf and on behalf of a purported class of persons (the "Avoca Plaintiffs") who claim they were injured by exposures to chemicals that were released from a plant in Avoca, Pennsylvania. Plaintiff alleges that Montgomery, McCracken, Walker & Rhoads, LLP ("MMWR") committed legal malpractice in its representation of Mr. Waleski and the Avoca Plaintiffs during the bankruptcy cases of Tronox Incorporated and its affiliates ("Tronox" or "Tronox Debtors") and that as a result the Avoca Plaintiffs' recoveries were less than they should have been. Two individual defendants were named in the original Complaint but have since been dropped from the action.

       The case was filed in the Court of Common Pleas in Luzerne County, Pennsylvania. It was removed from the Pennsylvania state court to the District Court for Middle District of Pennsylvania. Plaintiff filed a motion to remand the case to the state court, and the defendants filed a motion to transfer the case to the Southern District of New York. The Pennsylvania District Court granted the transfer motion but declined to decide the remand motion so that it could instead be resolved by this Court following the transfer. This Court later issued its *Memorandum Decision Denying Plaintiffs' Motion for Remand or Abstention*, dated July 18, 2019 [ECF No. 16]. On that same day the Court entered an Order that denied Plaintiff's motion for remand and/or abstention.

Prior to the transfer of the case the defendants had filed a motion to dismiss the complaint for failure to state a cause of action. Among the arguments asserted by the defendants was that Plaintiff's claims are barred by the applicable statute of limitations. The orders entered by the District Court in Pennsylvania had stayed further action on the motion to dismiss; after the transfer the parties did not take further action to obtain a hearing on the motion, and the prior stay remained in place. However, Plaintiff filed a separate motion seeking permission to file an amended complaint. MMWR opposed the motion to amend, arguing that an amendment would be futile because the proposed amended complaint could not survive a motion to dismiss. In its opposition papers MMWR reiterated its argument that the claims are time-barred.

At a hearing on December 5, 2019, the parties agreed that Pennsylvania statutes of limitation govern the asserted claims. They also agreed that the statute of limitations for the assertion of a negligence claim in Pennsylvania is two years and that the statute of limitations for the assertion of a breach of contract claim is four years. *See* 42 Pa. Cons. Stat. §§ 5524(7), 5525(a)(8). Plaintiff agreed that if the tort statute of limitations governs the claims then this action is untimely and must be dismissed. However, Plaintiff argued that the four-year contractual statute of limitations applies and that the action was filed less than four years after the contractual claims accrued. MMWR argued that under Pennsylvania's "gist of the action" rule the claims should be treated as tort claims (not contract claims) and that the action was untimely under any theory because the original complaint was filed more than four years after any claims accrued.

At the conclusion of the December 5 hearing, the Court ruled that it appeared that Plaintiff was entitled to amend the original complaint as a matter of right and that the proposed

amended complaint (the "Amended Complaint") therefore would be deemed to have been filed.[1]

The Court also ruled that the pending motion to dismiss would be deemed to apply to the

Amended Complaint and that the Court would first consider the statute of limitations defenses

that had been asserted, without prejudice to the parties' rights (after a decision on the statute of

limitations issues) to file further briefs to the extent other issues needed to be addressed.  The

Court allowed the parties to file supplemental briefs on the following issues:

> (1)      the applicability of the "gist of the action" doctrine to Plaintiff's claims, and the
>
>          applicability of certain decisions on that subject that the Court had identified
>
>          during the Hearing; and
>
> (2)      if a four-year contractual limitations period applies, the point at which the
>
>          contractual claims accrued.

Thereafter, the parties submitted supplemental briefs on these issues.

## Jurisdiction

As described above, the Court has previously ruled that the Court has jurisdiction under

28 U.S.C. § 1334 because Plaintiff's claims "arose in" the Tronox bankruptcy cases.  The Court

also held that mandatory abstention and permissive abstention theories did not call for the Court

to decline to hear the case.  Plaintiff has reserved his objections to those rulings but has not

otherwise argued that the Court lacks Constitutional or statutory power to adjudicate this matter.

## Applicable Pleading Standards

In reviewing a motion to dismiss a court must accept the factual allegations of the

complaint as true and draw all reasonable inferences in a plaintiff's favor.  *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *E.E.O.C. v.*

---

[1]      The Amended Complaint dropped the individual defendants from the action.

*Staten Island Sav. Bank*, 207 F.3d 144, 148 (2d Cir. 2000). However, the factual allegations in a

complaint must be supported by more than mere conclusory statements. *Twombly*, 550 U.S. at

555. The allegations must be sufficient "to raise a right to relief above the speculative level" and

provide more than a "formulaic recitation of the elements of a cause of action." *Id*. (citations

omitted). "[O]nly a complaint that states a plausible claim for relief survives a motion to

dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556).

      "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Id*. at 678 (citing *Twombly*, 550 U.S. at 556). The plausibility standard is not akin to a

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

unlawfully." *Id*. "[W]here the well-pleaded facts do not permit the court to infer more than the

mere possibility of misconduct," a complaint is insufficient under Fed. R. Civ. P. 8(a) because it

has merely "alleged" but not "show[n] . . . that the pleader is entitled to relief." *Id*. at 679; *see

also id*. at 682 (allegations are rejected where there is an "obvious alternative explanation" for

the conduct alleged that is more "likely") (internal quotation marks and citation omitted).

      The Amended Complaint refers to a Contingent Fee Agreement that MMWR signed (a

copy of which was attached to the original complaint and to the supplemental papers that

MMWR filed) and to various other documents.[2] It is proper for the Court to consider those

documents as part of the Amended Complaint in ruling on the motion to dismiss. *See Grant v.

County of Erie*, 542 Fed. Appx. 21, 23 (2d Cir. 2013) ("In its review [of a Rule 12(b)(6) motion

to dismiss], the court is entitled to consider facts alleged in the complaint and documents

---

[2]    Although the Contingent Fee Arrangement purportedly had, as an exhibit, a copy of a
separate contingent fee arrangement in effect between the Powell Firm and the Avoca
Plaintiffs, that separate fee agreement was not provided to the Court.

attached to it or incorporated in it by reference, documents "integral" to the complaint and relied

upon in it, and facts of which judicial notice may properly be taken under Rule 201 of the

Federal Rules of Evidence."); *Rothman v. Gregor*, 220 F.3d 81, 88-89 (2d. Cir. 2000) (noting

that it is proper to consider documents that are quoted in or attached to the complaint or

incorporated in it by reference, or that plaintiffs either possessed or knew about and upon which

they relied in bringing suit); *I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.*, 936 F.2d

759, 762 (2d Cir. 1991) (noting that it is proper to consider a document upon which allegations

are based, whether or not it is attached to the complaint).  In this regard, if an allegation is belied

by the terms of the documents, the documents are controlling.  *Id.; see also Alexander v. Board

of Education of City of New York*, No. 15-1959, 2016 WL 2610009 (2d Cir. May 6, 2016)

(summary order) (dismissing complaint where documents contradicted allegations).

## The Facts Alleged in the Amended Complaint

The Avoca Plaintiffs are 4362 individuals who claim they were poisoned or sickened by

releases of toxic and carcinogenic chemicals, including creosote, from a plant in Avoca,

Pennsylvania.  Amended Complaint ¶ 1.  They hired the Powell Law Group, P.C. (the "Powell

Firm") during the early 2000s to pursue personal injury claims against Kerr-McGee Corporation

and its affiliates, which had owned and operated the Avoca plant.  *Id*. ¶ 35.  Thereafter, certain

Kerr-McGee entities transferred assets to a newly-formed company that the parties have referred

to as "New Kerr-McGee," leaving certain assets (and tort liabilities) with the "Old" Kerr-McGee

companies.  *Id*. ¶ 44.  The "Old" Kerr-McGee entities, now renamed as Tronox, Inc. and its

affiliates, later filed bankruptcy petitions in this Court on January 12, 2009, which stayed the

pending personal injury cases.

After the bankruptcy filing, the Powell Firm contracted with MMWR to represent the Avoca Plaintiffs during the Tronox bankruptcy cases. To that end the Powell Firm entered into a Contingent Fee Agreement with MMWR, dated January 27, 2009. *Id.* ¶¶ 35, 48. The Contingent Fee Agreement provided that MMWR "will, in a manner to be mutually agreed with [the Powell Firm]," represent the interests of the Avoca Plaintiffs in the Tronox bankruptcy proceeding, and "shall proceed in the Tronox Bankruptcy in such manner as [the Powell Firm] and [MMWR] shall both agree." [ECF Dkt. No. 1-2 at p. 29 of 43].

On February 5, 2009, MMWR filed a motion seeking permission to represent one of the Avoca Plaintiffs, Michael E. Carroll, in his capacity as a member of the official committee of unsecured creditors in the Tronox cases. *Id.* 109. Plaintiff alleges that Mr. Carroll took on fiduciary duties as a member of the Creditors' Committee, and that MMWR's representation of Mr. Carroll gave rise to a conflict of interest with the Avoca Plaintiffs that MMWR never explained and for which MMWR never obtained a waiver. *Id.* ¶¶ 110-113.

On May 28, 2009 the Court established August 12, 2009 as the deadline, or "bar date," for the filing of creditor claims in the Tronox cases. *Id.* ¶ 72. MMWR then prepared and filed proofs of claim on behalf of the Avoca Plaintiffs. *Id.* ¶ 73. Plaintiff alleges that MMWR should have filed claims on behalf of the Avoca Plaintiffs in the aggregate amount of more than $5.3 billion, but that MMWR did not do so. *Id.* ¶¶ 74-81. Instead, MMWR overruled concerns expressed by other counsel and filed the claims in "unknown" amounts. *Id.* ¶¶ 83-86.

At some unspecified time during the Tronox cases, but prior to the end of 2010, MMWR undertook on behalf of Mr. Carroll and/or the Creditors' Committee to draft a Tort Claims Trust Agreement that would govern the administration of a personal injury claimants' trust that would be established under a bankruptcy plan and that would distribute funds to personal injury

7

claimants. *Id*. ¶ 114. Plaintiff alleges that this, too, represented a conflict of interest for which

no disclosure was provided and no waiver obtained. *Id*. ¶ 115. Plaintiff further alleges that the

trust documents should have provided separate treatment for the allowed claims of the Avoca

Plaintiffs (rather than combining the Avoca Plaintiffs with other claimants who had asserted

similar claims), and also should have included priority payment rights, objection rights and other

terms that would have maximized the recoveries of the Avoca Plaintiffs, but that MMWR failed

to include such terms in the documents it prepared. *Id*. ¶¶ 116-121.

In the late fall of 2010, MMWR allegedly instructed the Avoca Plaintiffs' other counsel

to "fit all of the Avoca Plaintiffs' claims into a payout matrix with allocations for each disease

category so that the claims would total $852,476,000, which was an artificial, understated,

unexplained and targeted amount." *Id*. ¶ 103.

The plan of reorganization for the Tronox bankruptcy cases was confirmed and entered

on the docket on November 30, 2010. *Id.* ¶ 122. The Tronox reorganization plan established the

Tronox Tort Claims Trust (the "Trust") to handle the administration and payment of tort claims

against the Tronox Debtors. The reorganization plan and the Trust Agreement establish

categories into which allowed tort claims are to be divided. The plan provided that the Trust

would be funded with an initial cash payment of $12.5 million, plus the right to 12% of the

proceeds of a certain fraudulent conveyance litigation against New Kerr-McGee, plus certain

insurance assets. The Avoca Plaintiffs' claims, and the claims of other victims of creosote

exposure (including claims related to a plant in Mississippi) were designated as Non-Asbestos

Toxic Exposure Claims, and 81.25% of the Trust's share of any recoveries from the fraudulent

transfer litigation were to be used to make payments to holder of claims in that category. *See*

*Memorandum Opinion as to Tort Claims Trustee's Motion for Instructions*, dated June 17, 2015
(Case No. 09-10156, ECF No. 3046).

The Tronox Debtors' Plan became effective on February 14, 2011. *Id*. ¶ 122. The next
day, MMWR terminated its representation of the Avoca Plaintiffs, "without notice and without
the consent or agreement of the Avoca Plaintiffs or their state-court attorneys." *Id*. at 123.

The fraudulent transfer litigation against New Kerr-McGee provided the biggest potential
source of funding for the Trust. On December 12, 2013, after a lengthy trial, the Bankruptcy
Court issued a decision concluding there was liability on the fraudulent conveyance claim. The
Court reserved decision on the amount of damages pending further proceedings, while at the
same time indicating that liability could be between $5.1 and $14.1 billion. *Id*. ¶ 128.

On January 15, 2014, the trustee of the Trust issued a report showing claims to be paid by
the Trust. The report showed that the Avoca Plaintiff's claims had been allowed in the aggregate
amount of approximately $949 million. *Id*. ¶ 133.

Several months later, on April 2, 2014, the parties to the fraudulent transfer litigation
filed a motion seeking approval of a settlement agreement, under which all of the fraudulent
transfer claims would be settled in exchange for a payment of $5.15 billion. *Id*. ¶ 128. On May
30, 2020, the Bankruptcy Court issued *Findings of Fact and Conclusions of Law on Joint Motion
for a Report and Recommendation to the District Court Recommending Approval of Settlement
Agreement Resolving the Adversary Proceeding and Issuance of an Injunction in Support
thereof*. (Case No. 09-10156, ECF No. 3002). On notice to the parties, the Bankruptcy Court
extended until July 7, 2014 the time to serve and file written objections to the report and
recommendations. Amended Complaint ¶ 130. On November 10, 2014 the United States
District Court for the Southern District of New York adopted the Bankruptcy Court's findings of

fact and conclusions of law and approved the settlement. *Id.* ¶ 131. A judgement was thereafter entered. *Id.* ¶ 132.

A total of $618 million was ultimately allotted for the satisfaction of Non-Asbestos Toxic Exposure Claims under the Trust. *Id.* ¶ 140. The Avoca Plaintiffs received their pro rata shares (a total of $329,693,120) in compensation for their claims. *Id.* ¶ 142.

### Plaintiff's Claims

Plaintiff asserts claims that he characterizes as breach of contract claims "arising from MMWR's action and inactions committed while representing the [Plaintiff]." Amended Complaint at ¶¶ 1, 29. Plaintiff alleges that by filing the Avoca Plaintiffs' collective claims in an "unknown" amount rather than $5.3 billion, MMWR "undervalued and failed to reflect the full value of the claims," resulting in reduced recoveries. *Id.* ¶¶ 80-92, 101, 134-142. Plaintiff further alleges that it was an error and breach of contract to fail to amend the proofs of claim or move to liquidate the claims. *Id.* ¶¶ 93-102. Plaintiff alleges that if the Avoca Plaintiffs' claims had been properly valued when originally filed, or if the filing had been corrected by amendment, or if the claims had been liquidated and fixed by an appropriate motion, the Avoca Plaintiffs' claims would have been approved in the amount of $5.3 billion instead of the "greatly reduced amount of $949 million." *Id.* ¶¶ 124, 148-150. Plaintiff alleges that MMWR "was contractually obligated to file, advocate, protect and maximize the claims of the Avoca Plaintiffs" in the bankruptcy case and breached this contractual duty. *Id.* ¶¶ 54, 143.

Plaintiff also alleges that MMWR subjected itself to a conflict of interest by representing one of the Avoca Plaintiffs as a member of the Creditors' Committee in the bankruptcy case. *Id.* ¶¶ 107-111. Plaintiff further alleges that MMWR failed to disclose its conflict of interest to the Avoca Plaintiffs or obtain a knowing waiver from them. (*Id.* ¶¶ 112-113). This conflict of

interest allegedly was intensified when MMWR drafted the Tort Claims Trust Agreement for the benefit of all tort creditors, "while already contractually obligated to represent the specific and unique interests of the Avoca Plaintiffs as unsecured creditors," and when MMWR failed to draft that document "in a fashion that protected the Avoca Plaintiffs and maximized their recovery in the bankruptcy case." (*Id.* ¶¶ 113-121).

Finally, Plaintiff alleges that MMWR improperly terminated its representation of the Avoca Plaintiffs on February 15, 2011, prior to payment of the bankruptcy claims, without notice or the consent of the Avoca Plaintiffs or the Powell Firm. The Amended Complaint alleges that MMWR left the Avoca Plaintiffs without representation in the bankruptcy proceedings and failed to provide unspecified information that the Avoca Plaintiffs allegedly needed for the continued prosecution of their claims. *Id.* ¶¶ 113, 121-123, 125, 183-184.

## Discussion

This action was filed on April 11, 2018. MMWR argues that Plaintiff's claims are in reality tort claims (not breach of contract claims) and that the claims therefore are barred by Pennsylvania's two-year statute of limitations for tort claims. Alternatively, MMWR argues that, even if Plaintiff were entitled to assert breach of contract claims, those claims accrued prior to April 11, 2014, and therefore they are barred by Pennsylvania's four-year statute of limitations for contract claims. I agree with both contentions.

### I.     The Asserted Claims Are Tort Claims (Not Contract Claims) And Are Time-Barred

It is possible that a party who does business with another party may be entitled to assert claims for breach of contract as well as tort claims. However, there are often instances in the law when parties try to treat a contract claim as though it were a tort claim, or to treat a tort claim as though it were a contract claim, in order to obtain a perceived advantage in terms of the damages

11

that may be awarded, the limitations period that may apply, or for other reasons.  Pennsylvania

courts use the "gist of the action" doctrine to resolve disputes as to whether a particular claim

sounds in tort or in contract.  *Bruno v. Erie Ins. Co.*, 106 A.3d 48, 61 (Pa. 2014).  "[M]erely

because a cause of action between two parties to a contract is based on the actions of the

defendant undertaken while performing his contractual duties, this fact, alone, does not

automatically characterize the action as one for breach of contract."  *Id.* at 63.  The "nature of the

duty alleged to have been breached, as established by the underlying averments supporting the

claim in a plaintiff's complaint," is the "determinative factor" in deciding "whether the claim is

truly one in tort, or for breach of contract." *Bruno*, 106 A.3d at 68 (Pa. 2014).

Accordingly, the label that a party applies to a claim is not controlling.  *Id*. at 68.  Instead,

the substance of the claim controls, and the court must apply a "duty-based demarcation" to

identify the true nature of the claim.  *Id.*

> If the facts of a particular claim establish that the duty breached is one
> created by the parties by the terms of their contract—i.e., a specific promise
> to do something that a party would not ordinarily have been obligated to do
> but for the existence of the contract—then the claim is to be viewed as one
> for breach of contract.  If, however, the facts establish that the claim involves
> the defendant's violation of a broader social duty owed to all individuals,
> which is imposed by the law of torts and, hence, exists regardless of the
> contract, then it must be regarded as a tort.

*Bruno*, 106 A.3d at 69 (citations omitted).  Even though work that one party does for another

may occur during the existence of a contractual relationship, the substance of the claim (and the

nature of the duty that was allegedly breached) determines whether a claim sounds in contract or

in tort.  As further explained by the *Bruno* court,

> [A] negligence claim based on the actions of a contracting party in
> performing contractual obligations is not viewed as an action on the
> underlying contract itself, since it is not founded on the breach of any of the
> specific executory promises which comprise the contract. Instead, the
> contract is regarded merely as the vehicle, or mechanism, which established

12

the relationship between the parties, during which the tort of negligence was committed.

*Id*. at 70; *see also Zell v. Arnold*, 1830 WL 3261 at *3, 2 Pen. & W. 292, 294 (Pa. 1830) (noting that where the gist of action "is not a failure to perform" under the contract but "a failure to perform in a workmanly manner," it is a tort.)

Prior to the *Bruno* decision, some courts had held that malpractice claims could be asserted as breach of contract claims on the theory that professional standards may be treated as implied terms of a retention agreement. *See*, *e.g.*, *Gorski v. Smith*, 812 A.2d 683, 697 (Pa. Super. Ct. 2002). *Gorski* and similar decisions relied on dicta in *Bailey v. Tucker*, 621 A.2d 108, 115 (Pa. 1993), in which the court stated that "an attorney who agrees for a fee to represent a client is by implication agreeing to provide that client with professional services consistent with those expected of the profession at large." Following the *Bruno* decision, however, courts applying Pennsylvania law have consistently held that the "gist of action doctrine" has to be applied in determining whether a claim alleging negligence in performing legal services is a claim in tort or a claim for breach of contract. They have also rejected contentions that rules of professional conduct constitute "implied" contract terms, and have consistently held that claims based on alleged violations of professional standards are tort claims rather than contract claims.

In *New York C. Mut. Ins. Co. v. Edelstein*, No. 15–1541, 637 Fed. Appx. 70 (3d Cir., Feb. 1, 2016) (unpublished decision), for example, the Third Circuit Court of Appeals considered a complaint that alleged that attorneys had breached implied contractual terms by failing to perform services in a manner consistent with professional standards. The *Edelstein* court rejected this concept and rejected the outcome reached in *Gorski* and other cases, finding them incompatible with the *Bruno* decision and with the requirement, under *Bruno*, that a contract claim be based on a breach of a "specific" executory promise. 637 Fed. Appx. at 74.

13

In *Brenco Oil, Inc, v. Blaney*, No. 17-3938, 2017 WL 6367893, at \*3-4 (E.D. Pa. Dec. 13, 2017), the United States District Court for the Eastern District of Pennsylvania similarly held that *Bruno* requires that the "gist of the action" doctrine be applied.  The underlying complaint in that case asserted a tort claim rather than a contract claim, because the complaint alleged that a firm had been negligent or careless in providing legal services rather than that the firm failed to perform a specific task named in a contract.  *Id*. at \*4.  As a result, the defendant was alleged to have breached "a general social duty" not a duty that was created by the contract. *Id*.  Courts reached the same conclusions in *Jacoby Donner, P.C. v. Aristone Realty Capital*, LLC, No. 17-2206, 2018 WL 1609341 (E.D. Pa. Apr. 2, 2018) (dismissing claim alleging breach of contract where the gist of the claim was that the attorney was negligent in performing contractual duties); and *Rinker v. Amori*, No. 15-1293, 2016 WL 1110217, at \*7 (M.D. Pa. Mar. 22, 2016) (dismissing malpractice claim that arose from one attorney's alleged negligent performance of his contractual obligations, but continuing breach of contract claim against another attorney that arose from the breach of an explicit agreement or instruction).

Most recently, in *Juday v. Sadaka*, No. 19-1643, 2019 WL 4139089, at \*5 (E.D. Pa. Aug. 30, 2019), the court cited to many of the foregoing decisions and noted that "[s]ince *Bruno*, Pennsylvania courts have routinely applied the gist of the action doctrine to legal malpractice actions and dismissed claims that are under contract law but actually are based on failure of the defendants to abide by the relevant standard of care."  The court in *Juday* dismissed legal malpractice claims as being barred by the two-year tort statute of limitations for tort actions.

We have found no contrary authority.  Plaintiff has complained about MMWR's citation of an unreported and non-precedential decision issued by the Pennsylvania Superior Court in *Seidner v. Finkelman*, Nos. 716 EDA 2017 and 808 EDA 2017, 2018 WL 4178147, at \*5 (Pa.

14

Super. Aug. 31, 2018), which held that claims based on failing "to exercise ordinary skill and knowledge" in performing a certain task or to "do due diligence" constituted a negligence claim (not a breach of contract claim) that was subject to a two-year tort statute of limitations. Plaintiff argues that the decision in *Seidner* must be ignored by this Court because Pennsylvania court rules provide that a non-precedential decision may not be cited.  *See* I.O.P. § 65.37, which derives from Pa. R.A.P. § 126.  I note that by their terms the relevant Pennsylvania court rules are only binding on the state courts of Pennsylvania.  *See* Pa. R.A.P. § 103 (noting that the scope of the rules concerning appellate procedure govern practice and procedure in certain Pennsylvania state courts).  At least one court outside Pennsylvania has cited to the *Seidner* decision as authority for the proper application of Pennsylvania law.  *See Etman v. Greater Grace World Outreach, Inc.*, No. 17-473, 2018 U.S. Dist. LEXIS 29017 at *12 (N.D.N.Y. Feb. 22, 2018).  It does not matter, however, because *Seidner* is consistent with *Bruno*, *w*ith the federal court rulings cited above, and with my own interpretation of the relevant authorities. *Seidner* is not critical to my decision, and I would reach the same decision even if *Seidner* were to be ignored.

The prevailing rule under *Bruno* and subsequent decisions is that a purported contract claim that is not based on a specific contractual undertaking, but that instead alleges breaches of professional standards of care that supposedly are incorporated into a contract by implication, is in reality a tort claim and is subject to a two-year statute of limitations.

Plaintiff has argued that the "gist of the action" doctrine is only applicable when someone asserts tort and contract claims at the same time and that the doctrine does not apply when a plaintiff chooses to characterize claims in only one way.  However, there is no logic to that assertion, and no support for it in the case law.  It is true that in some of the cited decisions

plaintiffs sought to pursue both tort and contract claims, but none of the decisions cited that as a

factor that is relevant in any way to the application of the "gist of the action" doctrine. Instead,

the doctrine was described as one of general applicability, and at least one of the decisions cited

above involved a case where (as here) the plaintiff sought to characterize a legal malpractice

claim as a contract claim and did not otherwise seek to pursue a tort claim. *See New York C.

Mut. Ins. Co. v. Edelstein*, No. 15–1541, 637 Fed. Appx. 70 (3d Cir., Feb. 1, 2016).

Plaintiff also argues that the "gist of the action" doctrine should not apply to statute of

limitations determinations, but once again there is neither logic nor case law support for that

proposition. The *Bruno* court stated that the doctrine applies "to resolve other legal questions in

which the distinction between the underlying action being a tort or contract claim was

dispositive." 106 A.3d at 60. In this case that distinction is dispositive because a breach of

contract claim is barred after four years and a tort claim is barred after two years. As noted

above, a number of decisions (including *Brenco* and *Juday*) have concluded that *Bruno*, and the

"gist of the action" doctrine, control the application of the statutes of limitations, and dictate that

the tort statute of limitations (not the contract statute of limitations) should be applied so long as

the substance of the claim is that the lawyers failed to live up to professional standards, rather

than that the lawyers breached an explicit contract term.

In this case the only contract cited in the Amended Complaint is the Contingent Fee

Agreement between MMWR and the Powell Firm. There is not a single allegation in the

Amended Complaint that alleges a breach of a specific undertaking in that contract. Instead,

Plaintiff alleges that "[t]he parties' agreement included the implied promise and legal mandate

that [MMWR] would zealously, competently and diligently represent the interests of the

Plaintiffs. *See* Pa. R. Prof. Conduct 1.1, 1.3, *passim*." Amended Complaint ¶ 175. There is no

16

provision in the Contingent Fee Agreement that governs the manner in which proofs of claim

would be filed, or the representations that Defendant could undertake, or the circumstances under

which MMWR could terminate its representation.  The gist of Plaintiff's claims is that MMWR

violated professional standards of care – *not* that MMWR violated a contract.  The contract

merely established a relationship between the parties.  It is tort law (not contract law) that

defined the duties of care to be followed by MMWR in performing its work, and the alleged

violations of those duties of care constitute tort claims, not contract claims.

Plaintiff argues that rulings about the "gist of the action" require the resolution of factual

issues and can only be made by a jury at trial.  However, the *Bruno* decision contemplates that a

court should determine the correct character of a claim based on the pleadings.  *See Bruno*, 106

A.3d at 68 (Pa. 2014) (holding that "the underlying averments supporting the claim in a

plaintiff's complaint" are the "determinative factor" in deciding "whether the claim is truly one

in tort, or for breach of contract.")  In any event, Plaintiff has not identified any factual issues

that need to be resolved, and the Court can think of none.

I therefore conclude that the allegations in the Amended Complaint assert tort claims, not

contract claims, and that the claims are barred by Pennsylvania's two-year statute of limitations.

## II.    Alternatively, Any Contract Claims Accrued More Than
Four Years Prior to Suit and are Time-Barred

Even if the Amended Complaint properly asserted breach of contract claims, and even if

a four-year statute of limitations applied, the claims asserted in the Amended Complaint would

still be time-barred.

Under Pennsylvania law, the time within which an action must be commenced is

computed "from the time the cause of action accrued."  42 Pa. Cons. Stat. § 5502(a).  An action

accrues "when the plaintiff could have first maintained the action to a successful conclusion."

17

*Fine v. Checcio*, 870 A.2d 850, 857 (Pa. 2005); *Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.*, 468 A.2d 468, 471 (Pa. 1983) (noting that the statute of limitations commences when "the right to institute and maintain a suit arises.").

In this case, the lawsuit was commenced on April 11, 2018.  Plaintiff asserts that the claims did not accrue until July 7, 2014 at the earliest (the date to file objections to the Bankruptcy Court's report recommending to the District Court that it approve the settlement of the fraudulent transfer claims), on the theory that damages are a critical element of such a suit and based on the contention that the Avoca Plaintiffs could not assess the amount of damages until after the objection deadline for approval of the fraudulent transfer settlement had expired.

Plaintiff's contention is misguided.  Pennsylvania contract law recognizes a party's entitlement to at least nominal damages immediately upon the occurrence of a material breach of a contract.  *Carulli*, 216 A.3d 582, citing, *Freedom Oil Works Co. v. Williams*, 302 Pa. 51, 152 A. 741, 743 (1930) (holding that where defendant admitted there was a breach of contract, plaintiffs were entitled at least to nominal damages); *Wolfe v. Allstate Prop. & Cas. Ins. Co.*, 790 F.3d 487, 497 (3d Cir. 2015) (noting that under Pennsylvania law, summary judgement would be inappropriate if the only argument against a breach of contract claim was the absence of damages because such claimant would be "nonetheless entitled to recover nominal damages''). The Avoca Plaintiffs therefore had the right to file suit when the alleged breaches of contract occurred, and any contract claims "accrued" at that time, regardless of whether additional damage claims had yet been liquidated.

No decision has been cited in which a Pennsylvania court has applied a different accrual rule to a claim based on legal malpractice.  Prior to the delineation of tort and contract claims in *Bruno*, and without distinguishing between a tort or a contract legal malpractice claim,

Pennsylvania courts generally concluded that in a legal malpractice action the statute of limitations began to run at the time of the occurrence of a breach of duty, not at the time when there was a full liquidation of an economic loss. *Wachovia Bank, N.A. v. Ferretti*, 935 A.2d 565, 572 (Pa. Super. 2007) (applying concept to both tort and legal malpractice claims); s*ee also Robbins & Seventko Orthopedic Surgeons, Inc. v. Geisenberger*, 674 A.2d 244, 246 (Pa. Super. 1996) (applying concept to tort claim and stating that "[i]n Pennsylvania, the occurrence rule is used to determine when the statute of limitations begins to run in a legal malpractice action. Under the occurrence rule, the statutory period commences upon the happening of the alleged breach of duty.")

The alleged breaches in performance by MMWR set forth in the Amended Complaint – including MMWR's actions concerning the proofs of claim, its involvement in the formation of the Tort Claims Trust, and the termination of its representation – all occurred prior to mid-February 2011, more than seven years prior to the commencement of this case. Contract claims therefore are untimely.

Plaintiff nevertheless asks this Court to apply an exception to the occurrence rule known as the "discovery rule." As a general matter Pennsylvania courts strictly apply limitations periods and "[l]ack of knowledge, mistake or misunderstanding, will not toll the running of the statute." *Wachovia*, 935 A.2d at 572. The "discovery rule," however, is an equitable remedy that tolls the running of the statute of limitations when, despite exercising due diligence, a party is unable to know of an injury or its cause. *Wachovia*, 935 A.2d at 572 (citations omitted).

The discovery rule has been applied primarily in personal injury actions where the injured party could not reasonably ascertain the existence of an injury or the cause of that injury. *See e.g.*, *Nicolaou*, 195 A.3d at 892; *Gleason v. Borough of Moosic*, 15 A.3d 479, 484 (Pa. 2011)

and *Fine v. Checcio*, 870 A.2d at 858.  Some Pennsylvania courts have extended the judicially

created discovery rule to non-tort actions, including quasi contractual actions such as unjust

enrichment and promissory estoppel.  *See* cases cited in *Carulli v. North Versailles TP. Sanitary*,

216 A.3d 564, 579-80 (Pa. Cmwlth. 2019).  However, there is a split of authority as to whether

the doctrine should be extended to cases involving an express written contract.  *Compare*

*Carulli*, 216 A.2d at 583-84 (concluding that the discovery rule should not be extended to breach

of contract actions involving express written negotiated contracts), with *Morgan v. Petroleum*

*Prods. Equipment Co.*, 92 A.3d 823, (Pa. Super 2014) (stating that the discovery rule applies to

all causes of action including breach of contract).

I do not need to decide if the Pennsylvania courts would apply the discovery rule to

breach of contract claims because, even if the discovery rule were applicable to breach of

contract claims generally, the allegations of the Amended Complaint make clear that the

discovery rule would not be applicable to the claims asserted in this case.

The discovery rule cannot be invoked, and the limitations period is not tolled, once a

plaintiff is put on "inquiry notice" of a potential claim.  "Inquiry notice" is "actual or

constructive knowledge" of some identifiable harm "without the necessity of notice of the full

extent of the injury."  *Nicolaou*, 195 A.2d at 892; s*ee also*, *Fine*, 870 A.2d 858 (concluding that

reasonable diligence is measured by what a plaintiff might have known "by the use of the means

of information within [its] reach").  A party can be on "inquiry notice" even if the party does not

know the full extent of the loss that the party may experience.  The basic inquiry is whether there

are any identifiable damages; if so, it is not necessary that the plaintiff be able to calculate the

full amount that might be owed.  *Wachovia*, 935 A.2d at 572 (addressing issue of whether actual

loss was required before a plaintiff could commence action for legal malpractice to avoid

dismissal based on claim being remote or speculative, the court held that "the test of whether damages are remote or speculative has nothing to do with the difficulty in calculating the amount, but deals with the more basic question of whether there are identifiable damages. Thus, damages are speculative only if the uncertainty concerns the fact of damages rather than the amount.") (internal citations and quotation omitted).

The party that seeks application of the discovery rule also has the burden of proving the exercise of reasonable diligence. *Id.* The issue is not what was actually known by the injured party "but what he might have known by exercising the diligence required by law," taking into account the "qualities of attention, knowledge intelligence and judgment which society requires of its members for the protection of their own interest and the interest of others." *Nicolaou v. Martin*, 195 A.3d 880, 893 (Pa. 2018) (citation omitted).

This simply is not a case where the very existence of an alleged breach of contract, or the very existence of an injury, could not reasonably have been ascertained in the exercise of due diligence. There is no allegation in the Amended Complaint that the Plaintiff, or the Avoca Plaintiffs generally, lacked awareness of the manner in which their proofs of claim were filed in 2009, or the fact that the "allowed" amounts of those claims ultimately was $949 million (not $5.3 billion). There is also no allegation that the Avoca Plaintiffs did not know the terms of the Trust documents, which in any event were publicly available. The Avoca Plaintiffs knew (or should have known simply by paying attention to papers filed in court) what the Avoca Plaintiffs' allowed claims were, that those claims would share *pro rata* with other similar claims, and that the Avoca Plaintiffs would not enjoy any priority in distributions.

Similarly, there is no allegation that the Plaintiff or the Avoca Plaintiffs were unaware at the time of MMWR's representation of Mr. Carroll, or of the terms of the Trust and the TDPs

21

that MMWR drafted (which were publicly filed documents), or of MMWR's termination of its

representation in February 2014. There are allegations that Plaintiff did not appreciate the

implications of the alleged conflicts of interest, but those allegations are not enough to permit the

discovery rule to be invoked. Inquiry notice of the facts constituting the alleged breach – not full

knowledge and appreciation of all the particulars of a legal claim -- is enough to negate the

application of the discovery rule.

All of the information upon which the present claims are based – the details of the proofs

of claim that were filed, MMWR's representation of Mr. Carroll, the structure of the Trust and of

the TDPs, the amounts of the Avoca Plaintiffs' allowed claims, and the termination of MMWR's

representation – was reflected in publicly filed documents and was openly available to the Avoca

Plaintiffs by mid-February 2011 or earlier. This is therefore not a situation in which the very

existence of a contractual breach could not have been ascertained through the exercise of

reasonable diligence. The availability of nominal damages also resulted in an accrual of any

contract claims at the time the breaches occurred. In addition, the initial funding of the Trust

made it clear that there would be some financial impact from the breaches of duty that are

presently alleged. The April 2, 2014 filing of a motion to approve the settlement of the

fraudulent transfer litigation further made clear that the events about which the Avoca Plaintiffs

are now complaining would have a large financial impact on them.

It was not necessary to the accrual of their contract claims that the Avoca Plaintiffs know

the exact dollar amount by which their recoveries might be reduced. Similarly, the fact that the

settlement of the fraudulent transfer litigation was not finalized until later in 2014 is not a proper

reason to invoke a "discovery rule" as to Plaintiff's breach of contract claims. The alleged

breaches of duty described in the Amended Complaint all could have been ascertained from

public events and filings that occurred no later than mid-February 2011.  Plaintiff's April 11,

2018 effort to assert contract claims based on those matters is barred by the statute of limitations.

Plaintiff argues that a "reasonable diligence" is fact intensive and should be left to a jury,

but based on the allegations of the Amended Complaint and the admitted chronology of events it

is plain that no plausible claim for application of the "discovery rule" has been pleaded or could

be pleaded.

### Conclusion

For the foregoing reasons, all of the claims asserted in the Amended Complaint are

barred by the applicable statutes of limitation, and the Amended Complaint should be dismissed,

with prejudice.  A separate Order will be entered to this effect.

Dated: New York, New York
        February 21, 2020

                              **s/Michael E. Wiles**
                              HON. MICHAEL E. WILES
                              UNITED STATES BANKRUPTCY JUDGE